The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manor or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning everybody, please be seated. Welcome to the United States Court of Appeals for the 4th Circuit. We have three cases on for argument this morning. The first one is 24-1416, Finn v. Humane Society of the United States. Mr. Collins. Good morning, Your Honors. May it please the Court. I am here representing two individuals who were former employees of the Humane Society of the United States, now with a slightly different name. I'm sure my opposing counsel will explain that. But they both filed for exemptions from the COVID vaccine. You're obviously familiar with the background on this in that this case was held in abeyance pending the Barnett decision, which came out in January. And so you have asked us for supplemental briefing as it relates to the differences between this case and the Barnett case. And so I suppose I need to kind of address the specifics of each individual plaintiff as to what they did and why they filed their exemption request. Ms. Finn signed, and I think they both signed, a Humane Society form that attested to their sincerity and their beliefs. It's a pretty straightforward case, isn't it, at least from that perspective? The question is whether it meets the religiosity test. And in this instance, you do have the benefit of this case that was not there for this district court judge. And from your perspective, for 12B-6, that's where we are, isn't it? That's exactly right. That is sufficient for pleading purposes, particularly when you're dealing with religion. I couldn't agree with you more, Your Honor. And quite honestly, I actually, after the Barnett decision came out, I fully expected that this just to be reversed and remanded. Can I actually ask you a question? Certainly. And it goes to one of the plaintiffs, to I think it's Ms. Finn, is that right? Yes. So in Barnett, we said that it was sufficient to plead first that your belief is an essential part of religious faith, but also that it is plausibly connected, your religious belief has some connection or nexus to your objection to the shot. And I couldn't tell from Ms. Finn's statement, I understand that she has a religious belief in the sanctity of her conscience, but she never says what conscientious belief is in conflict with the workplace regulation here. Where is the conflict? Your Honor, first off, I would hearken back to the decision, I think it's Passarella. I guess before you cite a case, do you know the answer to that question? What is the nature of the objection to the shot? Well, the reason I bring that case up is because what you're really dealing with here is how well does somebody have to plead to the employer as if they were in court? In Passarella, they made it clear you don't need to. Just as if you're talking to someone. I have a conscientious objection to working in this factory, and the objection is I'm a pacifist, they make armaments. Like, there's supposed to be a conflict there. Well, clearly. And so she is talking about her conscience, okay? She talked about her faith in God. Understood. She talked about Father and Son, Jesus. I am not doubting the religiosity of her belief. I am asking you, how does that belief connect to her objection to this shot? She based it on all of those things and used her conscience to reach the conclusion that this would be immoral for her to do. Now, morality is, you can be moral and not religious. I get that. But clearly, when you are religious and you form a moral decision, which is what she did, that's clearly, when you talk about your conscience, you're making a moral decision and you are reaching a conclusion. And what this lower court said. So you feel, I mean, that is not how I read Barnett. But your understanding of Barnett is that if I come in and say I have a religious objection to workplace requirement X, we're done here. I don't have to explain the nature, you know, what it is I object to about working in this particular factory. We're done. Well, I always, you know, when I was studying for the SATs, they said never do the nevers and the always, okay? So I'm going to object to having to answer it in the absolute. So obviously, on the fringes, maybe there's something. But I will say that the- It's not a fringe case. Well, you're asking, you know, would you always be able to do it? No, what I'm saying here is under these facts, under these facts, clearly people, including her, had religious objection to this. This is not even fringe. There were millions of Americans that had religious objections to the use of these vaccines. And in every case I could find, they said what the objection was. They said my body is a temple and that's why I can't put something in it. Or they said these vaccines were tested on stem cells and that's where the point of conflict is. And I would say I have a very practical concern about this because, and I think you say this in your brief, under Title VII, once you get an exemption request like this, that's supposed to start a dialogue and the employer is supposed to see if there's another way they can accommodate the objection. But if you don't know what the objection is, how is the employer supposed to do that? Well, the objection here was clearly to not take the vaccine. The objection was to the vaccine itself. The law does not and the Supreme Court has not required people to explicate the religious dogma that teaches them. No, no, no, that's not what I'm asking. It's a religious belief. Let's take it out of the vaccine because maybe what you're saying is it ought to be obvious. Everyone should be able to figure it out. So let's make it one that's less obvious. I can't work in this factory because I have a religious objection. What's the employer supposed to do to see if they can accommodate my objection? I won't say what it is. I won't say what the point of conflict is. That situation is not this. That situation is I can't work here, I'm not going to tell you why. That's what this is. I can't get the shot, but I won't tell you why. All I will tell you is I have a conscientious objection. So let me go back to the term conscience and conscientious objection. She said that this would betray her conscience, and she referred to the Catholic bishops and the Pope's encyclical on that, and that it was written on her heart. Those are all terms that are used throughout the case law, which, by the way, is consistent throughout the various circuits. That conscience itself, and when you refer to them, she clearly is Catholic. She's referring to the Pope's encyclical. She's referring to the fact that she does not think that this was moral for her to do. And when a person- The question that Judge Harris is posing is really a question that asks you, what is the limiting principle here? Okay. In other words, when you say my conscience and heart are guided by something, where is the limit on that? Okay, and that's an excellent- And that's the point that's made in the cases from the Barnett. And the trial judge here didn't have the benefit of the Barnett case, of course, and focused on the fact that you did not, as you say, look at the dogma, call out Catholic or that sort of thing. Those things have within it the religious aspect of seeing it directly. I submit you probably won't run into this again because I'm pretty sure the next time this comes up it will be said differently, perhaps by the person that's doing it in terms of as we begin to delineate how it should be said. But in writing such an opinion here where the basis is my conscience and heart are guided by it, what is the limiting principle? What I would suggest to you in that, Your Honor, is that's really no different than saying I prayed to God and from that prayer I have reached the conclusion that I can't do this thing. All right, so prayer. Do you believe in prayer? Some people don't believe in prayer. A lot of people do believe in prayer, as did the founders of our country and the people that wrote Title VII. I mean, when you get into the examples, of course, you can always pick them apart and do things. That's not the aim here. The aim here is focus on even the prayer itself. Does that mean that you can get on your knees and say a prayer and now I don't have to do it because I prayed about it? That's not exactly what we probably look at as being fulfilling of the religiosity requirement. That's where I was going with that. The specifics is somewhere in between here. We're trying to work that, and I think that was the purpose. We're going to have to move to a place where we can identify this individual. Again, we're on 12B-6 now. So I think that might sway a little bit more in terms of the pleading of it, and whether you survive on summary judgment might be another question, or even beyond there, but we are there. But the limiting principle is really what we're focusing on. Well, that's what I was heading to, Your Honor, was the fact that, number one, there were interviews also done after she submitted it. So those are part of the facts, not the record yet, because we're at 12B-6, but those are part of it. There were two interviews done of this individual where she was able to discuss this with them. That's number one. But if you're asking for a limiting principle, what I was about to- Can I ask you what she said? I'm just genuinely curious. Pardon me? What did she say? What was her objection? Her deposition has not been taken, and I don't have a specific quote to give you. And certainly that's one of the things that will happen in this case when you remand, if you remand. Well, but don't we have to rely- Excuse me. I'm sorry, Mr. Collins. Don't we have to rely on the complaint- Exactly. And the statement made by Ms. Finn? So that's what we need to focus on. Depositions come later. Back to Judge Harris's question, what is it about Ms. Finn's statements that put her closer to the category of Ms. Muldoon's statements or the ones that we thought were appropriate in Barnett? Your Honor, I made a list of Chinnery, Finn, Muldoon, and Barnett, and of what the words were that they used. And the similarity in the words that they were using is amazing. I mean, they all used very, very similar language in expressing themselves on this. And that's why I brought up that Passarella case, because we're not talking about lawyers pleading things. Yes, the complaint is there. I believe I have alleged it clearly in the complaint under 12b-6, that it was because of her religious beliefs and her sincere religious beliefs that she could not do that. If you're going to focus only on the one document, which is the one thing that they both submitted to HSUS, that's a bit of a different thing, and that is where Passarella comes in. But if you're talking about this limiting principle, what I would suggest is that the limiting principle comes in at the next step. Because Title VII has two extremely important limiting principles. One is undue burden. Okay? The other is sincerity. If they can show she was insincere, they can win this. If they can show that she was, that they have an undue burden, they can get past this. One of the things that the lower court used was this, oh, this creates a blanket privilege. There will be chaos in the workplace, as if there would be chaos in the workplace. And that simply is not the case. It certainly is not borne out by what's happened since then. But more importantly, it just doesn't even make sense under Title VII. The limiting principle comes on the sincerity aspect, because people can believe all sorts of things that you don't understand and you don't agree with. And you would come to a different conclusion if you were to get on your knees and pray, if you were to exercise your conscience, if you were to read the Pope's encyclical and reach a different conclusion. I mean, it's funny, because this case almost seems like it's from a different era. What if I want a COVID vaccine and I'm not in an FDA-recommended category? I guess I'd be under the free exercise clause, but same idea. Can I get one by saying my conscience is my God and my conscience tells me the FDA needs to make an exemption and give me a COVID shot? I believe that there is case law, Your Honor, that deals with unapproved drugs. Well, it's being approved for some people. Pardon me? But so you would say I have sufficiently pled my entitlement to an exemption and they would have to say there's a compelling interest. I don't remember the exact standard on this. I know that this issue has been argued and- It has already? That was fast. Who argued it? I've seen it in briefs on this topic, exactly that issue. To get the COVID? That argument was being used on the other side, saying, wait a minute, what if I wanted to do that? And what the courts have said is that we don't have a constitutional right to take a drug. So if a drug is taken off the market, for example- But it's on the market. Oh, if it's on the market? It is. If I'm over 65, I can get it. If I'm physically inactive, I can get it. I feel like I have a really good case. Oh, you're talking about somebody who- I'm talking literally about the COVID vaccine. And somebody is not eligible for it? I believe what the courts have said, and I have not briefed this, Your Honor, but I believe what I've seen in other briefs that I have read, they've argued that the FDA, that nobody can claim a constitutional right to something that the FDA has prohibited. That's what I read. I don't think that that is dispositive of this issue. Pardon me? But you think I have gotten past sort of the first step. I have sufficiently pled a burden on my-a substantial burden on my religious beliefs, and then they're going to say, well, there's a compelling interest in not giving it to you because you're two years too young. I believe that would be the analysis, Your Honor. That makes sense to me. But I think we really have different facts here, and I would urge you to do one thing, and that is to compare the expression that was used by the four different plaintiffs that we're talking about, Chinnery, Barnett, Finn, and Muldoon, and they are amazingly similar. Thank you very much, and I'll reserve my last five minutes. Thank you. Thank you, Mr. Collins. Good morning, Judge Wynn, Judge Diaz, Judge Harris. May it please the Court. My name is Leslie Mafio. I am here on behalf of the Humane Society of the United States, recently renamed Humane World for Animals, and here to ask you to affirm the April 24, 2024 decision of the District Court of Maryland in this case. We've already discussed what happened in Barnett. Thereafter, there was the Chinnery case, and Judge Wynn, I believe you sat on the Chinnery panel, and in that case, the decision of the District Court was vacated and remanded so that the District Court could decide that case, you know, based on the guidance coming from Barnett. In Chinnery, this court dispensed with oral argument, and that didn't happen here. So you want to hear oral argument here, you want to hear from Mr. Collins, you want to hear from me, and I believe that's because you see how this case is different. You know, in Barnett, quoting a 1965 U.S. Supreme Court case, United States v. Seeger, this court clarified the test for maintaining a Title VII claim based on a failure to Why isn't it enough on 12 v. 6 for the claimant to simply indicate that they themselves characterize themselves as religious? Why is that not enough for plea purposes? Well, I think, you know, there's a two-prong test, that the belief is sincerely held and religious in nature. There is a second prong there. It seems not worth having a prong at all if all you have to do is say, my belief is religious. It's a light burden, clearly. In Barnett, the, sorry, in Seeger, the Supreme Court stated, Courts are not free to reject beliefs because they consider them incomprehensible. Rather, their task is to decide whether the beliefs professed are sincerely held and whether they are, in his own scheme of things, religious. Counsel, can I ask, sorry to interrupt you, so I think you may have garnered from the questions that we asked Mr. Collins that there might be some skepticism about Ms. Finn's assertions and the connection between her religious beliefs and the reason why she couldn't or wouldn't take the COVID vaccine. But what about Ms. Muldoon? I mean, it seems like Ms. Muldoon's statements are fairly well tracked, what we said was sufficient in Barnett. Are you suggesting that she, in light of Barnett, has not met the test either? I do think that Muldoon has not met the test. Why is that? First of all, both of these women, to me, very blatantly skirt around the issue of religion. I found it interesting that Mr. Collins said just a few minutes ago that Ms. Finn is obviously Catholic. But I don't think that was obvious at all from what she said. Well, do they need to identify a particular sect in order to satisfy the test? I don't know. No, no, absolutely not. So why does it matter? Absolutely not. I just thought it was interesting that he said she was obviously Catholic. It may be interesting, but it's not relevant. Well, I think what's relevant is both of their requests very much feel like, you know, hey, I don't want to blatantly lie, but I want to make this sound like a religious objection. So they kind of throw in. Well, that gets perhaps to the sincerity of a particular plaintiff's beliefs, but that's a different issue. Absolutely. And I understand sincerity is not an appropriate topic at the 12B6 stage. But I think with respect to Ms. Muldoon. You have a hard burden in that one. This reads that it would compromise her religious beliefs, found it in my Christian upbringing that fetuses are individuals. She's saying that's being used to make the vaccine, and she did not want consent to use her body for this. That's a hard one. Do you really want to walk that one? Would your time appear? I mean, maybe it is convincing to some extent, but I'm looking at it. That looks hard to me. Well, how often, I would ask, do you hear people talk about their religious upbringing, but for to explain changed circumstances? This is very important. She says, my religious beliefs here, and she's dealing with it, that fetuses are individuals, and you use the fetus to make this vaccine. I don't want to take this vaccine. But you want to keep up it. So go ahead. I don't care. I think you're very clearly telling me not to bother with Ms. Muldoon. No, I did not. From my perspective, it looks pretty clear to me. But, Finn, it seems like you can spend a little time on that, but I know that Death wanted to hear that too, and I do want to hear it. Go ahead and articulate your position on it. I just think with Ms. Muldoon. I said that so you'll know where I'm coming from. So now work with that and work me away from it. Absolutely. I just think when, you know, I think you can be opposed to abortion without that being a religious belief, and I think Ms. Muldoon attempts to make this sound religious by talking about her Christian upbringing. The only time I hear people talk about their religious upbringing is to say, oh, well, I was raised Catholic, but I'm an atheist now. Or I was raised Baptist, but I converted to Judaism when I married my husband. I never hear people talk about their Christian upbringing, but for to say that something is different now. And Ms. Muldoon didn't say anything about any religious beliefs she currently holds. She talked about religious beliefs that were founded in her upbringing. Basically, my parents were Christian, and they said abortion is wrong, and I believe that, but that doesn't necessarily make that a religious belief. So that's all I will say on Ms. Muldoon because, Judge Wynn, you at least have suggested you can't be convinced. You may have convinced me to go the other way. You just keep going. I just, you know, that's my point. Can I ask you a question? I feel like there are two different ideas kind of bouncing around this case. One is whether the belief being asserted is sufficiently religious in nature, and that's what we were talking about in Barnett. But it's actually not a two-part test. I think it's more like three parts. We have said that you need a prima facie showing that you have a religious belief, and that has two parts, sincere and religious, that conflicts with an employment requirement. And as to Ms. Finn, at least, I would like to know which argument you are making. Is it that there is no religious belief, her belief is not religious enough, or is it that there is no conflict played, a conflict between her religious belief and the requirement? Both, and I think that's what the district court held as well, that she did not articulate any religious belief that was in conflict with the then-applicable COVID vaccine mandate that the HSUS had at that time. How much does she have to say? She says her heart, conscience, and faith in God and Jesus prevent her from complying with the mandate. Does she need to write another New Testament? What else does she need to say? No, but I think she has to put the employer on notice of a religious belief that conflicts with the requirement. It's the same thing with an ADA accommodation. Somebody doesn't come in and say, I need to work from 12 to 4 based on a disability, and then the question is immediately, well, let's see whether we can reasonably accommodate that, or it's an undue burden. It's easier in the ADA case because we can have a doctor sort of go through much of that analysis for us and say, okay, is there a disability here that needs to be accommodated? But this is type 7, and the question is, give us an example because in the way in which you're putting it, I'm having some trouble. What is going to meet the religiosity requirement? What's an example in using here? How would she say this differently? Well, I think Barnett met the – I am not arguing that Barnett was wrongly decided. What I'm arguing is that you can take as true that Barnett was correctly decided and still make a different decision here. So what would Finn have said that would meet that requirement? I don't think Finn can meet that requirement. She can't say that I have a religion and speak to something specific within the religion and indicate that as a basis for me not to. Well, I suppose she could, but I don't think that that is her reality, or else I think she may have put it in her request. The difference with Finn and Barnett was Barnett said – Well, Barnett said that she is a devout Christian, and again, I'm not suggesting that you have to claim a specific religion to – Got that. What did she say? To meet that test. She said she was a devout Christian. She was baptized in 2011. Is she there yet with those two statements? So she's not there with those two statements. So what gets her there? Well, she says that it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it. So is that it? Not in its entirety, I don't think. That her religious reasons for declining the COVID vaccinations were based on her study and understanding of the Bible and personally directed by the true and living God. Not her conscience. She says this was directed by God. And finally, this court noted that she alleged that receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself. This court decided that that was sufficient. It seems as though the Supreme Court has gone this way. I'm not in the business of guessing what the Supreme Court is going to do if this case were to get there. But it seems as though, at least in these cases, the pleading requirements have really been softened, lightened quite a bit. Gets you to the ultimate test of saying the prima facie case has been established. Then you turn to probably something that's more meaty, and that's the accommodation aspect of it. Why wouldn't we move more in that direction with these kind of cases to determine, well, can there be accommodated? Because that's not what the law says. The law doesn't say somebody asks for a religious accommodation, see if you can reasonably accommodate it. Don't you see the trend with the Supreme Court and, you know, with Barnett? That seems to be the trend that's going in that direction. The court has a way of treating certain constitutional things differently and statutory things differently. We know that First Amendment, you know, privacy rights and stuff. So we'll treat it a little different here. Don't you think that's what's going to happen here with this religious requirement here? In terms of what we've seen, I'm not asking you to guess, but it's right there in front of you. It's basically pushing us to really probably get to either certainly to get to summary judgment on it, not just the pleading. And then the question might become if you do, even if you do meet the primary facing case, did you make any effort on the accommodation, which in this instance you don't get there because they never got to that aspect of it. Right. Trend? Yes, I see a trend. The tide has turned on these cases with respect to Title VII, and it does appear as of late that the vast majority of courts have ruled that they met their burden at the 12B6 stage. But the burden hasn't been eliminated, which strongly supports my contention that it is possible to not meet that  It is possible, if there is a test to see whether somebody has met a certain burden, whether somebody has established a prima facie case, there has to be examples of somebody unable to establish a prima facie case, unable to meet that burden, unable to show that they have a religious belief that is in conflict with the workplace requirement. It seems like ultimately the way these things are going to turn out, someone is going to come up with a ball plate list of what meets a religious requirement, and they're going to read that and walk into the HR department and read that requirement. That's going to take care of this issue. I mean, it's almost nonsensical when you think about it because it happens all the time. You give examples how to do things, and here they didn't use the magic words. And at the end of the day, very few of us were going to leave saying, she really didn't try to talk about religion. She's talking about religion. She just didn't say it in the manner that you were saying it should be said. But it just seems like it is definitely a direction. If it hasn't already gone there, someone is going to make a list of what meets the requirement, and you go there and you pull that piece of paper out and you read it. It's going to meet it. It's going to get a big quote on the pleading requirement if you do something different, at least in the private facing case. And that, to me, is very telling here. I mean, there are already. I don't know that there's an exact list that has been sort of blessed by the U.S. Supreme Court. I mean, there isn't. But the whole point of religion is that there is no one test. I mean, everybody comes to their faith or not. Exactly. Individually, right? And so let me ask you about this statement in Ms. Finn's, the sentence in Ms. Finn's statement where she points to an encyclical written by St. Paul VI that talks about conscience. And she says, she quotes it. She says, in all his activity, a man is bound to follow his conscience in order that, or a woman in this case, that he or she may come to God, the end and purpose of life. It follows that he is not to be forced to act in a manner contrary to his or her conscience. So essentially she's saying there that this encyclical, this religious tenet of the faith, although she doesn't say it's Catholic, but obviously St. Paul is a Catholic pope, leads her to an examination of her conscience, which is a significant part of the Catholic faith, to decide for yourself within limits obviously what your conscience says you should or should not do. And she comes to this conclusion that her conscience dictates that she not take the vaccine. That seems to me like faith, statement, consequence, result. It may not be as articulate as you may like it to be, but why is that not enough? I just don't think it can be because what it does is, and Mr. Collins addressed this briefly and pointed out that the sincerity and undue burden are sort of stop gaps. Well, they are, right, ultimately. You can still challenge that. I get it. It's a step that you might not like, might not prefer to take if you can kick out the case at the 12B6 stage. But anyway, tell me why that isn't enough. Well, the Passerella case was referenced by Mr. Collins. It was referenced in the Barnett case. Obviously it is, that's 108 F. 4th, 1005. Obviously that case is not binding on this court. And even more so, Judge Robner's dissent is obviously not binding on any court in any way. But this is one experienced, learned federal appellate court judge that I think had a very well-reasoned discussion of sort of a very similar fact pattern. There were also two plaintiffs in that case. With respect to Passerella, Judge Robner states that Passerella emphasized that her conscience comes from God, that the Holy Spirit dwells within her, and that she is obligated to operate under her conscience, which is a God-given message. Thus, while the science states that we should receive the vaccine for various reasons, we need to lean on God's understanding that has been given to us through our conscience, accepting any of the available COVID vaccines into my body would place my trust in man over my faith in God, which defiles his temple. Judge Robner says, It cannot be enough to state a claim for a religious accommodation to assert that because one's conscience is God-given, any decision one reaches in their good conscience is necessarily inspired and endorsed by God, and therefore is religious in nature. That was a dissent. I know, I know. I'm just saying, I think it is a very well-reasoned position. That did not win the day. That is true. That is true. In the Seventh Circuit, it did not win the day. Can I ask you a question? Yes. I mean, we're talking about, like, lists and what people might say or not say. I mean, what if one of these claimants had just come in and said, I have a religious belief against this vaccine? It seems to me that your problem is almost your concern is that they said too much. If they had just come in and said, look, I have a belief that I consider to be religious, and it is against getting this vaccine, would we, like, what about that? What would be the problem there? I don't know that I can weigh in on that hypothetical. Well, why not? I think it seems like for you, these women get in trouble because they try to say more. But if you just say, I mean, I don't know the list is going to be so long, just say I have a religious objection, period. Right. And maybe that would be different than what we have here. But here, to me, it seems to be a very clear attempt to skirt around the issue of religion, which to me suggests that it's not a religious objection at all. My time is up. Thank you very much. Thank you. I would also like to thank you for having oral argument in this. We don't get this opportunity too often. But first off, with regard to the Chinnery issue about whether to remand and for a first look at whether or not this should be reconsidered by the lower court, I would suggest to you that this is not an appropriate case. That case was different because it was, as I understood it, it was pro se. It was a per curiam decision. And here we have the pleadings. And the pleadings are very strong. If you look at page JA09, they talk about Finn saying, my conscience and heart are guided by my faith in God the Father and His Son, Jesus Christ. The HSUS policy would unjustly force me to act in betrayal of my conscience and faith. That's in the complaint. And that is sufficient to get past a 12B6 motion. And I would refer you to also page JA16. Here, plaintiffs had bona fide religious beliefs that conflicted with HSUS COVID-19 vaccine mandate. Those are in the complaint and should be considered adequate under 12B6. Can I ask you to just address the question I asked your colleague? If these claimants had come in and simply said, I have a religious objection. And that goes back to your earlier question to me. And I wanted to get back to that as well. But could you start by answering that? I will, absolutely. And that is, I believe that that actually would be enough because then what happens? What happened here? You go back and you have your conversation. And that earlier question you asked me, what would happen if the person comes in and says, I can't work at this factory? Okay. So the employer then says, well, we've got 12 other factories in the area. Is there one that you can work at? Oh, yeah, I can work at that one. And why can't you work here? Well, because at this factory, such and such. Okay. They explain themselves. But if the employer says. I'm sorry, so you think at some point the employee is going to have to explain what the conflict is but not up front? Well, at some point they're going to have to say where the conflict is in terms of what they can or cannot do. For example, you take, I had a Jewish employee. She had to leave Friday afternoons early to get home for Sabbath. We always let her go home early on Fridays and Sabbath, especially during the summer because the sundown and so forth. Or in the winter, excuse me, because of sundown. But so they need to explain not the tenant of the religion. They need to explain the limitation on them. Here, she explained the limitation on her. Her limitation was I can't get vaccinated. Okay. And that is against my conscience. But just imagine, I mean, I don't know that there were COVID vaccines available where some religious claimants did not believe they were tested with stem cells. But imagine there were. So this woman comes in and says I can't get vaccinated. But she doesn't say why. And so the employer doesn't know. Well, is there a vaccine out there I could give her to which she wouldn't have an objection because she never said what her objection was. Whether it was about stem cells or not. Do you see? I'm just worried that. Sure, I understand. But I thought maybe for a minute there we were agreeing that at some point she is going to have to say what the conflict is. But maybe not at this point. I think it's also a question of granularity. How much detail? Does she have to cite the catechism? Should she have cited the catechism instead of an encyclical? Of course not. I'm not looking for. I am 100 percent assuming it's a religious belief. There is no question that her belief, her conscientious objection comes from a religious source. I'm just saying at what point does she have to tell the employer what the conflict is so that the employer can try to figure out whether it can be accommodated. I think maybe we're talking past each other. Because what I see as the conflict is the taking of the vaccine. Or in your example, the working in that factory. Or that sort of thing. And, yes, she has to explain that. Now, if she comes back to the employer. Can I follow up on that? So with respect to Ms. Muldoon, she I think very specifically indicated the conflict was the fact that she believed that the vaccines included stem cells of aborted fetuses or fetuses. And that was the concern. So she fairly clearly explained why that was an issue. I guess Judge Harris's question is, does Ms. Finn have to do the same thing? I was about to get to that example. Exactly that example. And that would be when the conversation occurs. When you say, well, where is the conflict? Can we accommodate this conflict? Is there something we can do to keep you here? Yes, the employee has to engage in that process to try to figure out, is there a way to keep you here? Oh, wait a minute, there's a vaccine over here. Or will you mask? Will you socially distance? Will you test every day? Will you test every week? Those are all various things that could have been done but were not offered to these employees. Will you continue to stay home and work at home? Remember, we're talking about people who were working at home. Before I lose all my time, I did want to deal with the Chinnery case and why you shouldn't. You're over your time right now. Oh, I am over my time? Well, I just wanted to explain that I don't believe that this case is one that you should be sending back just for the judge to reconsider. All right. Thank you. Thank you, sir. All right, thank you both for your arguments. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, James Andrew Wynn, Pamela A. Harris